IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAVELLE WALKE                :    CIVIL ACTION
                             :
         v.                  :
                             :
JAMES CULLEN, et al.         :    NO. 05-6665


MEMORANDUM

McLaughlin, J.                              October 18, 2011


         The plaintiff brought this suit alleging constitutional
violations by two police officers.  In 2003, the defendants
executed a search warrant at the plaintiff's home and then
transported the plaintiff to a field office for questioning.  The
plaintiff alleges that the defendants acted unreasonably in
waiting only 30-40 seconds after knocking and announcing their
presence before entering his home.  He also alleges that
excessive force was used when he was blindfolded and forced to
lie on the floor of the police car during transportation.[1]

         The defendants moved for summary judgment on August 15,
2011.  The Court will grant the defendants' motion for summary
judgment.

_____

         [1] The plaintiff's complaint alleged violations of his Fourth
and Fourteenth Amendment rights in three counts and a violation
of the Pennsylvania Constitution, Article I, § 8 in a fourth
count.  The defendants moved for summary judgment on all four
counts.  In response to the defendants' motion for summary
judgment, the plaintiff dropped the two counts.  Pl.'s Mem. of
Law in Opp. to Defs.' Mot. for Summ. J. ("Pl. Mem.") 2.  The two
remaining claims by the plaintiff are addressed here.

I.   <u>Summary Judgment Record</u>

         The parties do not dispute the underlying facts of this
case.  On December 31, 2003, the defendants, two officers with
the City of Philadelphia police department, along with
approximately nine other officers, arrived at the plaintiff's
residence to execute a valid search warrant.  The warrant was
based upon controlled buys and confidential information which
suggested that the plaintiff was engaged in cocaine trafficking.
Def. Mot. for Summ. J. ("Def. Mot."), Ex. A ("Cullen Decl.") ¶¶
3-5.

         The defendants arrived at the plaintiff's two-story row
home at approximately 7:15 A.M.  At the time, the plaintiff was
asleep in his second story bedroom.  <u>Id.</u>; Pl.'s Mem. of Law in
Opp. to Defs.' Mot. for Summ. J. ("Pl. Mem."), Ex. B ("Walke
Decl.") ¶ 2.

         The defendants knocked and announced their presence,
waited 30-40 seconds and then, when there was no answer, forcibly
entered the home.  The plaintiff was found in his bed.  After the
plaintiff was placed in handcuffs and a loaded gun located under
the bed was secured, the plaintiff was read his <u>Miranda</u> rights.
Officer Cullen then explained to the plaintiff why police were
searching his home and requested his cooperation.  The plaintiff
cooperated with the search of his home, helping the officers
recover two guns, money from drug purchases, and over 800 grams
of powder cocaine.  Cullen Decl. ¶¶ 6-8; Pl. Mem., Ex. B ("Hr'g
Tr.") 23-28.

The defendants then detained the plaintiff for further questioning.  The plaintiff waited, unrestrained, in his kitchen while both defendants retrieved their car.  He was taken to the defendants' car.  The plaintiff was taken to the Narcotics Field Unit headquarters, the location of which was secret at the time of the plaintiff's arrest.  To keep secret the location of the headquarters and prevent the plaintiff from being seen with narcotics officers, the plaintiff was blindfolded and directed to lie on the floor of the car.  The plaintiff complied with this request.  The defendants questioned the plaintiff at the Narcotics Field Unit.  The defendants decided to release the plaintiff without arresting him at that time.  The plaintiff was blindfolded and asked to lie on the floor of the car again.  He was released by the defendants at a location near his home. Cullen Decl. ¶¶ 9-13; Hr'g Tr. 91-93.

The plaintiff was arrested several days later.  He was charged by federal authorities with intent to deliver more than 500 grams of cocaine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.  He pled guilty to these counts on October 15, 2005 and was sentenced by the Honorable Judge Diamond on September 22, 2008 to 123 months incarceration.  The plaintiff is currently incarcerated at Federal Correctional Institution Milan in Michigan.  Cullen Decl. ¶ 15; Def. Mot., Ex. C; Def. Mot., Ex. B ("Compl.") ¶ 1.

The plaintiff experienced anxiety attacks, night terrors, and sweats following the events of December 31, 2003 and is still brought to tears by recalling the day.  Walke Decl. ¶¶ 3-5.

II.  <u>Analysis</u>

A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, which may be satisfied by demonstrating the party who bears the burden of proof lacks evidence to support his case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  A plaintiff cannot "rest[] on the allegations in his pleadings, but rather must present evidence from which a jury could find in his favor."  <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 251 n.12 (3d Cir. 2010).

A.  <u>Entry Into the Plaintiff's Home</u>

Under the protection from unreasonable searches and seizures provided by the Fourth Amendment, before entering a dwelling, police officers must knock on the door and identify themselves.  <u>Wilson v. Arkansas</u>, 514 U.S. 927 (1995).  In <u>United</u>

States v. Banks, the Supreme Court considered how to apply the standard of reasonableness to the length of time police executing a warrant must wait after knocking and announcing before they can enter without permission.  540 U.S. 31, 35 (2003).

The Court held that police officers searching for cocaine acted reasonably when they waited 15-20 seconds after knocking and announcing before forcibly entering Bank's home. Id. at 33.  The Court reasoned that "after 15 or 20 seconds without a response, police could fairly suspect that cocaine would be gone if they were reticent any longer."  Id. at 38.

The plaintiff attempts to distinguish Banks from this case on two grounds.  First, the warrant in Banks was executed at two in the afternoon, while the warrant in this case was executed at seven in the morning, when the plaintiff presumably was asleep.  Second, the police in Banks executed a warrant in a two bedroom apartment, while the plaintiff's residence was a two-story home.

Neither fact distinguishes this case from Banks.  In Banks, the Court refused to find that police entry was unreasonable because Banks was in the shower when the police arrived and therefore unable to hear the knock or destroy evidence.  The Court was clear that when "judging reasonable waiting time" the facts known to the police "are what count." The police had no way to know that Banks was in the shower when they knocked, announced, and then entered.  Id. at 39.  Likewise,

5

there is no evidence that the police here knew the plaintiff was
in bed or asleep at the time they knocked and announced.

The Court explicitly addressed arguments about the size
of the residence in Banks.  The Court explained that in a search
for drugs, "the crucial fact in examining [police] actions is not
time to reach the door but . . . the opportunity to get rid of
cocaine."  Id. at 40.  The Court explained that "[t]here is no
reason generally to peg the travel time to the location of the
door, and no reliable basis for giving the proprietor of a
mansion a longer wait than the resident of a bungalow."  Id. at
40.

In Banks, the Court found that fifteen to twenty
seconds was a reasonable amount of time for police to wait before
entering to prevent the destruction of cocaine.  As the Court
explained, the hour of the day and size of the house are not
relevant to how quickly a suspect could destroy drug evidence.
Here, as in Banks, the defendants were searching for cocaine.
The defendants knocked and announced their presence and waited
nearly twice as long as the officers in the Banks case before
entering.  No reasonable jury could conclude that the defendants'
decision in this case was unreasonable.

B.   Excessive Force While Transporting the Plaintiff

The Fourth Amendment also protects against excessive
force while being detained by law enforcement.  Graham v. Connor,
490 U.S. 386, 388 (1989).  The inquiry into excessive force is an

objective one.  Id. at 397.  The question is whether the
defendants' actions, in light of the facts and circumstances,
were "objectively reasonable."  Id.   That is, whether the amount
of force a defendant used was the amount of force which a
reasonable officer would have used under similar circumstances.
A factfinder should consider all circumstances relevant to this
assessment, including the severity of the crime at issue, whether
the plaintiff posed a threat to others, whether the plaintiff was
actively resisting arrest, and whether the physical force applied
was of such an extent as to lead to unnecessary injury.  Id. at
396; Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004); Sharrar v.
Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

          Here, the plaintiff surrendered to police commands and
assisted them in locating items in the search warrant.  He was
permitted to remain in his home unrestrained while the defendants
brought their car to the front of the house.  There is no
evidence of a threat to civilians in the area.  Thus there was no
justification for much force.

          The force the defendants used, however, was minimal.
The defendants had the plaintiff wear a blindfold and lie on the
floor of the car.  There is no evidence or allegation that the
defendants applied any physical force to the plaintiff nor that
the plaintiff suffered any physical injuries from doing so.  The
Court recognizes that blindfolding and transportation by police
officers can be frightening and intimidating, especially
following an early-morning search of one's home.  In this case,

the plaintiff had cooperated with the police, was unrestrained prior to his transportation, and was aware of the reason for the blindfolding and laying on the floor of the car.  The Court concludes that no reasonable jury could find that this minimal use of force was objectively unreasonable.

      An appropriate order will issue.